In re PREFERRED ALUMINUM,
INC., Debtor.

Diane L. JENSEN, Trustee in
Bankruptcy, Plaintiff,

v.

Don C. TUDOR, Jr. and Bonded
Pools, Inc., Defendants.

Bankruptcy No. 89–9104–9P7.
Adv. No. 90–616.

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Aug. 26, 1991.

---

Diane L. Jensen, Fort Myers, Fla., for plaintiff.

Brian Levy, Cape Coral, Fla., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration are claims set forth in a four-Count Complaint by Diane Jensen (Trustee) against the Defendants, Don C. Tudor, Jr. (Tudor) and Bonded Pools, Inc., (Bonded Pools). The claim in Count I of the Complaint, based on § 547 of the Bankruptcy Code, alleges that certain payments on a debt owed by the Debtor to Tudor in the amount of $32,316.17 were made within one year of the commencement of the Chapter 7 case while Tudor was an insider. In Count II of the Complaint, which is based on § 547 of the Bankruptcy Code, the Trustee seeks to avoid payments by the Debtor to Bonded Pools in the amount of $5,500.00 made within one year of the Debtor filing its Petition for Relief under Chapter 7 while Bonded Pools was an insider. The claim in Count III is based on § 544(b) of the Bankruptcy Code and Florida Statutes § 607.017(4), and the Trustee seeks to avoid the payment of $501.00 by the Debtor to Tudor, made to redeem Tudor's stock of the Debtor. The claim in Count IV is based on § 544(b) of the Bankruptcy Code and Florida Statutes § 726, and the Trustee seeks to set aside fraudulent transfers by the Debtor to Bonded Pools in the amount of $21,500.00. The facts relevant to the matters under consideration, as established at the final evidentiary hearing, are as follows.

At the time relevant, the Debtor was in an aluminum fabricating business which was incorporated in March, 1988 with a loan in the amount of $30,000.00 by Tudor and a loan in the amount of $20,000.00 by Bonded Pools, of which Mr. Tudor is the president. It is undisputed that at all relevant times, the Debtor had other creditors in addition to Tudor and Bonded Pools, and that the Debtor's liabilities always exceeded its assets, and the Debtor was insolvent.

It appears that Bonded Pools was in the business of constructing outdoor swimming pools for both retail customers and home builders. When Bonded Pools had a contract to build a pool, it subcontracted a portion of the job to the Debtor and the Debtor built the aluminum enclosure, called a cage, around the pool if the customer desired. Under the arrangement between the Debtor and Bonded Pools, Bonded Pools was paid for the entire contract but in turn, under the agreement it would pay the Debtor for the cost of constructing the cage. After the Debtor was paid for the construction, it would issue one check either to Tudor or to Bonded Pools as a partial payment on the initial start-up loan to the Debtor and also a commission payment to the sales representative who sold the cage to the customer. There is nothing in this record which would enable this Court to determine what amount was a loan repayment and what amount was a sales commission paid by the Debtor on any of the transactions involved.

Richard Murray (Murray), the former president of the Debtor, was responsible for the Debtor's day-to-day operations. Tudor signed all of the Debtor's checks and had input in the Debtor's financial decisions; however, Tudor was not involved in the day-to-day operations of the Debtor's business. Murray, Tudor, and the accountant for the Debtor discussed the Debtor's finances on occasion; however, in late 1988 it appears that the relationship between Tudor and Murray soured, and Murray instructed his employees and the Debtor's accountant to not show Tudor the Debtor's books or to even discuss the Debtor with him. Thus, since early 1989, Tudor was effectively prevented from reviewing the Debtor's books and learning the status of the Debtor's finances.

In June, 1989, the Debtor and Tudor entered into a settlement and stock repurchase agreement whereby the Debtor paid Tudor $501.00 in order to redeem all of Tudor's stock in the Debtor. (Plaintiff's Exhibit #25). Pursuant to that agreement, the Debtor issued three checks to Tudor in the total amount of $32,316.17 in satisfaction of Tudor's $30,000.00 loan to the Debtor. These are the facts relevant to the matter under consideration.

In order to sustain a claim under § 547 of the Bankruptcy Code, the Trustee must prove that the Debtor made transfers which meet several requirements.

11 U.S.C. § 547. Preferences.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

● ● ● ● ●

■ Many of the elements of § 547(b) are undisputed. For example, there is no doubt that the Debtor transferred property to both Tudor and Bonded Pools and there

is likewise no doubt that the Debtor was, at all times, insolvent. Further, Tudor owned more than 50% of the stock in the Debtor, he signed the Debtor's checks and he had input into the Debtor's financial decision. Clearly, Tudor exercised a certain amount of control over the Debtor to a significant extent, and Tudor is an insider as defined by § 101(30)(B)(iii) of the Bankruptcy Code. The fact that Tudor was the president of Bonded Pools at all relevant times leads this Court to conclude that Bonded Pools too was an insider of the Debtor.

In fact, it is clear that the checks issued by the Debtor to Tudor and Bonded Pools were for payments on loans *and* payments for commission to salesmen. This record is devoid of any credible evidence as to what amount was paid by the Debtor to Tudor or to Bonded Pools solely for loan payments. Of course, to the extent the payments to Tudor and Bonded Pools were for sales commissions, these payments were either transfers made as a contemporaneous exchange for new value or they were payments in the ordinary course of the Debtor's business and thus are payments which cannot be avoided by the Trustee. 11 U.S.C. § 547(c)(1) and (2). Since the Trustee has failed to prove which payments to Tudor and Bonded Pools were on account of an antecedent debt, Counts I and II of the Trustee's complaint cannot be sustained.

This leaves for consideration the claims set forth in Counts III and IV of the Trustee's complaint. The claim set forth in Count III of the Trustee's complaint is based on Florida Statutes § 607.017 and § 544(b) of the Bankruptcy Code. Florida Statutes § 607.017 provides in pertinent part as follows:

§ 607.017. Right of corporation to acquire and dispose of its own shares.

(1) A corporation shall have the right to purchase ... its own shares, whether direct or indirect, ...

(4) No purchase of, or payment for, its own shares shall be made by a corporation at a time when the corporation is insolvent or when such payment would make it insolvent.

.     .     .     .     .

Section 544(b) of the Bankruptcy Code provides as follows:

Section 544. Trustee as lien creditor and as successor to certain creditors and purchasers.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

It is undisputed that the Debtor was, at all times, insolvent. Thus, when the Debtor entered into a Settlement Agreement with Tudor (Plaintiff's Exhibit # 25), whereby the Debtor purchased from Tudor his stock interest in the Debtor, the Debtor violated Florida Statutes § 607.017(4). Pursuant to § 544(b) of the Bankruptcy Code, the Trustee may avoid this transfer, and the Trustee therefore prevails on Count III of the Complaint.

Count IV of the Trustee's complaint is based on Florida Statutes § 726.106, which defines fraudulent transfers to a creditor as follows:

726.106. Transfers fraudulent as to present creditors.

(1) ...

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

.     .     .     .     .

While there is no doubt that some of the elements of Florida Statutes § 726.106 are met, this record is replete with evidence that Tudor was kept in the dark and not informed about the Debtor's financial status. The president of the Debtor left the office when Tudor arrived, employees of the Debtor were instructed to not show

Tudor any books and records of the Debtor, and the accountant of the Debtor was instructed to not discuss the Debtor with Tudor. When so many steps were taken to prevent Tudor from learning about the Debtor's financial status, it cannot be successfully argued that Tudor had reasonable cause to believe the Debtor was insolvent and thus, the Trustee's claim in Count IV of the complaint must fail.

In sum, this Court is satisfied that Counts I, II and IV of the Trustee's complaint are unsupported and thus should be dismissed. This Court also finds that the Trustee has met the requisite burden of proof regarding Count III of the complaint and Tudor should be directed to turn over to the Trustee $501.00, the money he received from the Debtor to repurchase Tudor's stock in the Debtor. A separate Final Judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.